GEORGE GRIFFITH, Administrator, Appellant, v. WAPELLO COAL COMPANY, Appellee.

Mines and mining: PERSONAL INJURY: NEGLIGENCE: WITHDRAWAL OF
1  ISSUES. It was alleged in this action for the death of a miner, killed by loaded coal cars which had broken loose from the train and run down an incline along which they were being brought to the shaft, that the master was negligent in failing to maintain a derailing switch on that portion of the track near the shaft, but there was no competent evidence that reasonable care for the safety of employees required such a switch, nor that, had it been provided, it could have been operated so as to have prevented the injury to deceased. *Held,* that the court properly withdrew the allegation of negligence from the jury.

Instructions: REFUSAL TO GIVE THOSE REQUESTED. Requested instruc-
2  tions were properly refused, where those given by the court fully and correctly covered the same questions.

*Appeal from Monroe District Court.*—HON. D. M. ANDERSON, Judge.

THURSDAY, SEPTEMBER 23, 1909.

REHEARING DENIED SATURDAY, JANUARY 22, 1910.

ACTION to recover damages on account of the death of plaintiff's intestate, Arthur Parker, from injuries received by him while employed in defendant's mine. There was a verdict for defendant, and plaintiff appeals.—*Affirmed.*

*Mitchell & Price* and *Hunter,* for appellant.

*J. C. Mahry* and *Perry & Perry,* for appellee.

McCLAIN, J.—The questions presented on this appeal relate entirely to the giving and refusal of instructions; and the facts and circumstances relating to the accident causing the death of plaintiff's intestate need only be stated so far as they bear upon the action of the court in this respect. While plaintiff's intestate, Parker, an employee in defendant's mine, was waiting at the foot of the shaft to be elevated to the surface, he was struck by loaded coal cars which had broken loose from the "trip" of which they formed a part, and ran down an incline in the track along which they were being brought to the shaft. The method of propelling and controlling the cars on the track was by a cable attached at the front and rear ends of the trip operated by means of machinery, so that the cars constituting the trip could be pulled forward or held back as occasion might require. As this trip of cars approached the shaft, it was being held back by means of the cable, when the trip broke loose from the restraining cable at the rear, and ran down the incline to the shaft, striking Parker, and causing his death.

I. One of the allegations of negligence on the part of defendant was in failing to maintain a derailing switch or "flying dutchman" on that portion of the track down which cars approached the shaft, and appellant assigns error in the action of the court in withdrawing from the consideration of the jury this allegation of negligence.

1. MINES AND MINING: personal injury: negligence: withdrawal of issue.

The only evidence on this subject was found in the statement of defendant's foreman, who testified as a witness, that a derailing switch is a switch that can be operated by a lever placed at any desired point in the mine and connected with the switch by wire, by means of which lever the switch could be so operated as to wreck and stop a train that had broken loose; and that of defendant's general manager, who testified that he had known of the device called a "derailing switch" for a good many years.

Plainly the statements of these witnesses did not tend to show that in the practical operation of the cars in defendant's mine a derailing switch would have been proper on the portion of the track down which these cars ran after they broke loose from the cable, or that such a device had it been installed could have been so operated as to avoid the injury to deceased. The incline in the track extended back from the shaft about two hundred feet. Counsel for appellant concede that the effect of a derailing switch would be to wreck the "trip" and cause peril to employees who might be riding thereon. Whether this danger would in general be less than the danger involved in allowing the cars to run down to the "sump" at the foot of the shaft is not indicated in the evidence. There is nothing to show that derailing switches are usual under such circumstances, nor on the whole that they are conducive to the safety of employees. In short, there is not the slightest evidence that in the exercise of reasonable care for the safety of employees the defendant should have installed a derailing switch on the decline in the track near the shaft. Under these circumstances, it is not necessary to discuss the numerous authorities cited by counsel in argument. In the absence of any evidence whatever that reasonable prudence required the installation of a derailing switch, and that, had such switch been maintained, it could have been operated practically so as to prevent the injury to deceased, there was nothing to go to the jury on this assignment of negligence. It is true that failure of other mine owners to employ such a safety device could not excuse defendant from doing so if the device should have been employed by the defendant in the reasonable operation of its mine and the exercise of reasonable care on the part of defendant requiring its use. But, until it was made to appear by evidence for the plaintiff that defendant was bound in the exercise of reasonable care to install such a device, the usage in other mines was

immaterial.   Such usage might have been proven for the
plaintiff in order to show that defendant was negligent in
not installing such an appliance; but, in the absence of
any proof of negligence on the part of defendant, there
was no occasion for defendant to show that such an ap-
pliance was not in use elsewhere under similar conditions,
and that reasonable care did not require its installation,
and that such installation was impractical or would not
have averted the danger to employees at the foot of the
shaft.   The burden was on plaintiff to show negligence on
defendant's part, and, until there was some evidence tend-
ing to establish such negligence, there was nothing to go to
the jury in relation to the alleged failure to maintain such
safety device.

II.   Another alleged ground of negligence was the
failure of defendant to use proper care in ascertaining by
reasonable inspection whether the draw bars and couplings
of the cars operated in its mine were suffi-

2. INSTRUCTIONS: refusal to give those requested.

cient and in good condition and continually
in repair.   Appellant assigns error in the
refusal to give instructions asked on this subject.   But the
court did fully instruct the jury with relation to defend-
ant's duty to inspect, and, without setting out at length the
instructions refused and those given, it is sufficient to
state our conclusions after a careful reading of them that
the instructions given fully covered the subject, and are
open to no reasonable objection as applied to the circum-
stances disclosed in the evidence.   The instructions fully
detailed the considerations which counsel for appellant in-
sist ought to have been submitted to the jury in determin-
ing whether under the evidence the inspection was rea-
sonably sufficient, and are not open to the objection that
they only presented to the jury the circumstances relied upon
by defendant to show that there was such inspection as the
nature of the business required to be made for the pro-
tection of employees.

The alleged errors which we have considered are the only ones on which appellant specifically relies. There are other general criticisms of the instructions given, but, reading the instructions as a whole, we find them to be unobjectionable as applied to the case on trial.

Finding no error in the record, the judgment is *affirmed*.